# H. C. Masters, *Sheriff of Kay County* v. Robert R. Teller.

### (Filed July 30, 1898.)

1. Agent—*Property—Possession.* Under the circumstances in this case, "constructive" is equivalent to actual possession, the possession of the agent being the possession of the principal.

2. Same—*Inquiry—False Credit.* Wherever there is a merely constructive possession of personal property, persons interested are put upon inquiry. Such a possession does not give a false credit.

3. Property.—*Sale and Delivery.* A sale is sufficient if it places the property at the disposal of the vendee and gives him, not only the title, but the constructive possession of the property, with power to reduce it to actual possession at his own pleasure.

4. Same—*Vendor's Creditors.* The good faith and genuineness of a sale, and all the circumstances which tend to exhibit the transaction in its true light, are matters of consideration for the jury, who must find from the evidence whether the sale was in good faith and whether there was a sufficient change of possession of the personalty as against the vendor's creditors.

5. Same—*Taken Under Execution—Defense.* Where the sheriff takes and carries away property and disposes of it under an execution and judgment, his defense, in order to be a valid one, must be averred in his pleading as a valid execution and judgment, and the evidence must also show that the property was taken under a valid writ, issued by a court of competent jurisdiction, particularly describing the property taken with sufficient certainty to identify it.

(Syllabus by the Court.)

*Error from the Probate Court of Kay County; before Robert Neff, Probate Judge.*

*A. A. Byers,* for plaintiff in error.

*V. H. Brown* and *Cotteral & Hornor,* for defendant in error.

## STATEMENT OF FACTS.

This was an action brought in the probate court of Kay county, by Teller to recover damages against Masters. The amended petition, upon which the case was tried, charged that Masters was the sheriff of Kay county, on the first of January, 1896, and that the plaintiff was at the time the owner and in the lawful possession of a sorrel mare and a buggy, of the aggregate value of $200; that the defendant, in the capacity of sheriff, levied upon the property with a pretended execution, pretended to be issued by Giles, justice of the peace, to satisfy a pretended judgment in the justice's court in favor of Frank Kuhn and against B. J. Mayes and W. J. Morgan, and that the sheriff levied upon the property mentioned as the property of W. J. Morgan; that the sheriff was thereupon notified by William Morgan, who had possession of the property for and on behalf of the plaintiff; that the property was owned by the plaintiff, and that notwithstanding, the defendant, sheriff, deprived the plaintiff of it, and converted it to his own use, and for damages. The defendant denied generally, admitting that he was the sheriff, that he took the property as charged, and alleging "that he took said property under and by virtue of the execution issued out of the justice court by J. A. Giles, justice of the peace of Newkirk, in said county and Territory, to satisfy a certain judgment in favor of Frank Kuhn and against one W. J. Morgan and B. J. Mayes, rendered by said justice," and alleging that "the property described in the amended petition was the property of said W. J. Morgan at the time the defendant levied upon the same to satisfy said judgment, as commanded by said execution."

The evidence was submitted to the jury, and tended to show that the property referred to had been the property of W. J. Morgan, but that it had been sold to the plaintiff, Teller, prior to the issuing of the execution against W. J. Morgan, that the property had before that time been included in a mortgage for the sum of $80, which Teller at the time held and owned; that Teller was a resident of Arkansas City, Kansas, and that he and the two Morgans, who were father and son, had been for a long time friends; that the property had been, before the beginning of this litigation, kept upon the farm of William Morgan, the father, in Kay county, this Territory, but had been used and handled by W. J. Morgan for several months prior to the time that it was levied upon by the plaintiff in error; that on the 6th day of January, 1896, before the levy of the execution, the Morgans drove the horse and buggy from Kay county to Arkansas City, Kansas, and while standing in front of a store there, belonging to one of the Morgans, Teller purchased the property. At the time of the sale Teller walked out of a store where he was to the sidewalk where the horse and buggy were, and told William Morgan, the father, to take care of the horse and buggy for him. A written  bill of sale, dated January 6, 1896, purported to sell the property to Teller, in consideration of chattel mortgage referred to, which is held by Teller, and the sum of $20, and was executed by W. J. Morgan and witnessed by L. S. Morgan.

The property was immediately taken back to the farm of William Morgan in Kay county, under Teller's direction, and thereafter William J. Morgan continued to use it, saying that he "just drove it when he pleased, and when he got ready." Teller lived about eight miles from

where the horse was kept, and did not know for several days after the execution that the horse had been taken out of the possession of Morgan.

The case was given to the jury, under instructions, one of which, excepted to by the plaintiff, was to the effect, that:

"You are further instructed, if you find from the evidence that W. J. Morgan delivered said property to this plaintiff when said sale was made, and that plaintiff turned said property over to William Morgan to keep and care for, that said property was in the actual possession of said plaintiff, Teller, and that it would not be necessary for plaintiff to have said property in his hands any particular length of time, and that the possession of the agent is the possession of the principal."

The jury afterward returned a verdict for the plaintiff, Teller, assessing his recovery at the sum of $100, upon which judgment for that sum was entered.

Opinion of the court by

McATEE, J.: The errors complained of and argued in the brief were that the evidence did not, as a matter of law, sustain the verdict, and that the case should have been taken from the jury; and that Teller was guilty of culpable negligence, and probably, fraud, and that the verdict was not sustained by the evidence, and that the instruction of the court quoted in the statement of facts was erroneous.

We cannot sustain the contention. No averment of fraud was made against the plaintiff by the answer of the defendant; no instruction to that effect was asked of the jury. If it was ever intended to be used as a defense, it was abandoned, and the instruction complained of is a correct statement of the law, except as to that part of it which states that, "if the jury find

that the plaintiff turned the property over to William Morgan to keep and care for said property, that said property was in the actual possession of said plaintiff, Teller," etc. This was technically incorrect, but only technically. The statement should have been that, "if the jury find that the property was in the constructive possession of the plaintiff, Teller," etc. This error was, so far as the statement of the law was concerned, as applied to the facts of this case, merely technical, since, if the court had used the word "constructive," the legal result would have been the same, since, as to constructive, as well as the actual possession, in the language of the instruction, the possession of the agent is the possession of the principal.

The law will not permit a retention of possession after the sale, which would give to the vendor a false credit, and deceive the creditors, but, as is said by Bump in Fraudulent Conveyances, pp. 169-171, that this can only occur in the case of actual possession by the vendor, for wherever there is a merely constructive possession, the persons are put upon inquiry. Such a possession does not give a false credit. It is, therefore, a general principle that a constructive possession will pass upon a constructive delivery. A sale is sufficient if it places the property at the disposal of the vendee and gives him, not only the title, but constructive possession of the property, with power to reduce it to an actual possession at his own pleasure, and that, even if the property had remained in the possession of the vendor, W. J. Morgan, the transfer would have been sufficient, since notice to the bailee is all that is required.

And the circumstances of the sale and its good faith and genuineness, and all the circumstances which tend

to exhibit the transaction in its true light, are matters of consideration for the jury, who must find from the evidence whether the sale was in good faith and whether there was a sufficient change of possession to the per- sonalty as against the vendor's creditors. (*Renninger v. Spatz*, [Pa.] 18 Atl. Rep. 405; *Claflin v. Rosenberg*, 96 Am. Pec. 346.)

But the defendant's pleading and testimony were in- sufficient to constitute a valid defense, since the plead- ing did not set up that the property was taken under a valid execution and judgment, and the evidence did not show that the property was taken under a valid writ, issued by a court of competent jurisdiction, particularly describing the property taken with sufficient certainty to identify it. Where the sheriff takes and carries away the property, so much must be shown by way of justifi- cation. If the record does not disclose this much, the action of the sheriff will appear as a trespass with- out warrant. (*Taylor v. Morrison*, 73 Ill. 566; *Shultz v. Frank*, 1 Wis. 352; *Sexey v. Adkinson*, 34 Cal. 346; 2 Greenleaf on Evidence, 629.)

The judgment of the court below will, therefore, be affirmed.

All of the Justices concurring.