**FARMERS STATE BANK OF BURBANK v. TIPTON et al.**

No. 23078. Dec. 11, 1934.

Hamilton, Gross & Howard, for plaintiff in error.

John W. Tillman and Fred A. Tillman, for defendants in error.

PER CURIAM. This is an appeal prosecuted by the Farmers State Bank of Burbank from a judgment of the district court of Osage county.

The record is somewhat confusing and difficult to understand; however, the following is a statement containing those facts necessary to determine the question here presented. The bank will be referred to as plaintiff and Delia Tipton as defendant.

One Dell Tipton borrowed money from the plaintiff bank on December 31, 1928, giving therefor his promissory note in the amount of $775 due April 30, 1929. Said note was secured by a chattel mortgage covering eight Jersey cows, seven yearlings, 31 shoats, five work horses, and all natural increase. The note was renewed on May 31, 1929, by the execution of a new note and mortgage. Dell Tipton defaulted on the note, and this action was instituted by the plaintiff bank to recover on the note and to foreclose the chattel mortgage. Delia Tipton, the wife of Dell Tipton, and the defendant in error here, filed her answer and special plea, claiming that the major part of the stock covered by the mortgage was her separate property and was owned by her prior to the execution of the note and mortgage. Dell Tipton has become a fugitive from justice, and the plaintiff obtained a default judgment, under the mortgage, as against him. This appeal involves only the rights of the plaintiff bank and the defendant Delia Tipton.

The defendant, in support of her claim, testified that for some time before and after the execution of the note and mortgage, she and her husband, Dell Tipton, lived together on the same farm; that for several years it had been her custom to own property individually, said property consisting, for the most part, of live stock; that this property had been listed separately by the tax assessor, and that she had paid the taxes on the same, or, at least, had given her husband the money with which to pay said taxes; that she did not know of this note and mortgage; that she purchased the stock to which she here asserts ownership as follows: Three head of horses, five Jersey cows, from her husband. (Two other head of horses are here involved, but Delia Tipton makes no claim as to them.) The record shows that this stock was on the farm both before and after the sale to her,

and that Dell Tipton used the same in the same manner after the sale as he had before, and there was no other fact or circumstance indicating an open and continued change of possession. The balance of the stock shown in the mortgage either did not exist or was purchased by her from third parties at a distance from the farm. However, the record further discloses in this connection that she gave money to Dell Tipton with which to make these purchases, and that he made all negotiations, including the consummation of the transactions, and paid for the stock with his own personal checks, and thereafter delivered said stock to Del'a Tipton at the farm.

Mrs. Tipton did not take a bill of sale from her husband, nor did she file an inventory of her separate estate, as provided in section 6612, C. O. S. 1921 (sec. 1658, O. S. 1931).

The trial court submitted the case to the jury, which found that Delia Tipton was the owner of all the stock herein involved, excepting the two horses to which she makes no claim, and that she was entitled to the same as against the claim of the plaintiff bank. This appeal is brought here on numerous asignments of error; however, the briefs of counsel confine themselves solely to assignment of error No. 4, the same being:

"The court erred as a matter of law in overruling the motion for directed verdict made by the plaintiff at the close of all the evidence."

This prayer was for a directed verdict as to seven head of Jersey cows and five head of horses.

This appeal presents the sole question of whether or not section 6021, C. O. S. 1921 (section 10008, O. S. 1931), applies to a transfer of personal property between husband and wife, under the facts in this case. Section 6021, C. O. S. 1921 (section 10008, O. S. 1931), reads:

"Every transfer of personal property other than a thing in action, and every lien thereon, other than a mortgage, when allowed by law, is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and

against any person on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or incumbrances in good faith subsequent to the transfer."

Section 6021 contemplates, both from its very language and from the decisions thereunder, an actual delivery and subsequent, open change of possession (Love v. Hill, 21 Okla. 347, 96 P. 623; Sankey v. Suggs, 111 Okla. 293, 239 P. 149) ; and it appears from an examination of authorities of other jurisdictions that this rule is uniform whether the parties to the transfer be husband and wife or strangers. In the case of Lockhart v. Edge, 167 N. W. 164, the South Dakota Court was called upon to answer the same question as that involved herein under a section of their statute which is identical with our section 6021, C. O. S. 1921. In determining that the rule applied to transfers between husband and wife, the South Dakota Court said:

"Was this attempted sale accompanied by an immediate delivery of said personal property, followed by an actual and continued change of possession at all times from the 26th day of May, 1915? To support the court's finding, the evidence must show delivery and change of possession immediately following the sale.

"The judgment must stand or fall on what occurred immediately upon the sale in connection with delivery and change of possession. Was there a sufficient delivery and change of possession? No one would claim that there was such a delivery and such change of possession as would be sufficient under any other conditions than those naturally existing between husband and wife. (Cites cases.) The real question, then, is, Shall a different rule be applied under section 2369 where the parties are husband and wife than in the ordinary case?

"Respondent urges that the filing of the bill of sale should be considered in her favor. In this she is in error. There is no statute authorizing the filing of bills of sale and rendering such filing or even a recording thereof, notice to any one. If our statutes authorized such a filing and made it constructive notice, such notice might be held to excuse a visible and open change of possession where otherwise it would be required. When the circumstances surrounding a sale are such as to render inconvenient, if not impossible, such visible change of possession as wou'd ordinarily be necessary under section 2369, is not the vendee bound to take advantage of such means as the statute provides for giving notice of claim of ownership? Should section 2369 be held to be inoperative owing to the fact that under our law, husband and wife may deal with one another, or even

though a husband and his wife are given the right to make transfers, the one to the other, should not such right be so exercised as to comply with the spirit of section 2369—should not the parties furnish such evidence of delivery and change of possession as the law makes possible? Section 2369 is a statute of frauds, enacted to prevent the opportunity of fraud: There is no class of cases that calls more urgently for such a statute than that of sales between those closely related. To hold that, merely because a husband and wife cannot conveniently make visible and notorious the change of possession of property transferred from one to another, they are put in a class by themselves, and need not even comply with reasonable statutory provisions providing methods of giving notice of change of ownership, is to make section 2369 inoperative in a class of cases wherein it is most needed. To avoid laying down poor law, let us remember that a perfectly bona fide sale from a husband to a wife is no more sacred than any other bona fide sale, and that all come under the provisions of section 2369. Respondent cites and quotes Grady v. Baker, 3 Dak. 296, 19 N. W. 417. We are unable to see where she gets any comfort from these words: 'The sale shall be open and public; that the world may be apprised of the change of ownership'."

The Supreme Court of California took the same view in the case of Murphy v. Mulgrew, 36 P. 857. At page 858 of the opinion, the court said:

"The main question here presented is, do the facts disclosed by the record support the transfer by the husband to the wife, in view of the provisions of section 3440 of the Civil Code? In other words, was there such an immediate delivery, and actual and continued change of possession, of the property, as is contemplated by that statute? There is no substantial conflict in the evidence upon this point, and plaintiff herself testified, in effect, as follows, regarding the transfer: 'I resided with my husband upon the homestead at the time I purchased these horses from him. He gave me a bill of sale of them at that time, and they were in the barn, a short distance from the house. Upon receiving the bill of sale, I put it away, and said, in substance, to him, "You take charge of this property for me and manage it for me." The horses remained at the homestead after the bill of sale, the same as before; and when we moved away, we took them with us. My husband drove them all this time, and managed them, just the same as before the bill of sale was made.'

"From the evidence of the plaintiff, it will be perceived that no actual change of possession of this property took place at the time of the delivery of the bill of sale; but, on the contrary, in all its surroundings, it

remained entirely in statu quo. Mrs. Murphy attempts to escape the legal effect of the foregoing evidence by the claim that she had appointed her husband her agent to take the possession and control of the horses for her, and, as such agent, his possession was her possession; but there is nothing to be urged in favor of such a contention. Both the letter and the spirit of the law contained in section 3440 would be defeated by the recognition of such a principle. The object of the statute is to require notice to the world of the transfer of personal property, in order that men may be able to deal with each other upon equal terms, and from a common level. The efficacy of the statute would be entirely destroyed if the vendor were allowed to remain in possession of the property as the agent of the vendee, in the absence of any notice to the world of such a change of conditions. Such a practice would be in direct conflict with the terms of the statute itself. We do not find a syllable of evidence in the record that would indicate to the outside world that a change of ownership had taken place as to these horses, and we can hardly imagine a case where the provisions of the statute could have been more entirely disregarded. Morgan v. Ball, 81 Cal. 92, 22 P. 331, is much stronger for the vendee, in its facts; and the language relied upon by respondent, taken from the case of Williams v. Lerch, 56 Cal. 334, has been well and justly criticized in the case of Etchepare v. Aguirre, 27 P. 668. The fact that a vendor and vendee are husband and wife, or parent and child, is no reason why the provisions of the statute should receive a different or more liberal construction. Those conditions give the statute no additional elasticity. The rule of construction is the same in all cases, and the relationship existing between the parties is a matter wholly immaterial. (Cites cases.)

"The transfer of the property in litigation by bill of sale was made January 11, 1890; and upon December 30th, following, plaintiff filed an inventory of her separate property in the recorder's office, in accordance with the provision of section 165 of the Civil Code. The Santa Rosa Bank became a creditor prior to the recording of the inventory, and the attachment proceedings upon the husband's indebtedness were begun November 16, 1891. It is now insisted by respondent that, conceding no immediate delivery and actual and continued change of possession took place at the date of the bill of sale, still, the subsequent recording of the inventory in the recorder's office, of her separate property, including these horses, cured any defective compliance with the provisions of section 3440, and gave her good title against the world from that day. It is unnecessary to pass upon the scope and purpose of section 165 of the Code. Whatever may be its scope and purpose, we are well satisfied it is not entitled to a construction that would nullify the provisions of section 3440 as to fraudulent transfers of personal property."

To the same effect is the case of Ross v. Thomas, 142 P. 102, decided by the Court of Appeals of California.

Under a statute identical with ours, the Supreme Court of Arizona adopted the same view in the case of Nolte et al. v. Winstanley, 145 P. 246.

The following cases are to the same effect: Wheeler v. Selden, 63 Vt. 429, 21 Atl. 615; Densmore v. Tomer, 11 Neb. 118, 7 N. W. 535; Seitz v. Mitchell, 94 U. S. 580, 24 L. Ed. 179.

The rule as established by the above cited cases is unquestionably founded on sound logic. The sole purpose of section 6021, C. O. S. 1921 (10008, O. S. 1931), is to prevent, in so far as the same may be done, fraudulent transfers. The requirements of this section should be applied to the transfers between husband and wife in the same degree as they are applied to transactions between strangers.

This court has, on occasions too numerous to mention, upheld the wife's right to own and maintain property separate from that of her husband. She possesses the equal right to buy, sell, and trade the same, but only under the same procedure imposed upon others. This right is no more sacred to her, or her husband, than to strangers, and she must comply with those laws in relation to the transfer of property as well as they.

The record clearly shows by Delia Tipton's own testimony that there was no visible delivery nor change of possession as to the five head of Jersey cattle and the three head of horses. This property remained, so far as third parties might ascertain, the property of Dell Tipton, who used and cared for it, in the same manner both before and after the sale. Of this sale the plaintiff bank had no notice, and is therefore entitled to a superior interest in the stock transferred by Dell Tipton to his wife.

There being no conflict in the testimony as to the lack of delivery and change of possession, it became the duty of the trial court to direct a verdict in favor of the plaintiff as to this property.

The defendant has cited the case of Bagg v. Shoenfelt, 71 Okla. 195, 176 P. 511. This case does not assist us here, since the

30

question of delivery and change of possession does not there arise.

As to the balance of the live stock, the evidence discloses that part of same was bought and paid for by the defendant, off her premises, and delivery made to her on the farm, and the evidence as to the change of possession thereof is sufficient. The evidence and inferences therefrom with reference to the identity, description, ownership, and possession of other stock, or the increase thereof, is such as to be properly submitted to a jury, and having been so submitted and their finding approved by the judge, under this record, we see no occasion to disturb the finding.

We are not unmindful of the resulting hardships which the holding in this case might work in a certain class of transactions; however, it is obvious that a contrary holding would, for the reasons above set out, tend to destroy the wholesome effects of the statute.

The judgment of the trial court is reversed in so far as it concerns the five head of Jersey cows and three head of horses, and the same is remanded, with instructions to the trial court to direct a verdict in favor of the plaintiff bank as to them. The judgment is affirmed as to the balance of the stock.

The Supreme Court acknowledges the aid of Attorneys Earl Foster, C. D. Bennett, and E. E. Blake in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Foster and approved by Mr. Bennett and Mr. Blake, this cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.